And we move to the next case this morning, which is the United States v. Payne. I know that's on the briefs. Murphy v. Wexford Health Services. Thank you all. Thank you, Your Honor. Murphy v. Wexford. Is that the case we're on? All right, then, Mr. Flaxman. Thank you, Your Honor. May it please the court if you hear me? Yes. Oh, good. My name is Kenneth Flaxman. I represent the Aptalon. This is a case about five strikes that Dr. Shah had in treating Mr. Murphy. These five strikes. Oh, I have to turn off the YouTube. I'm sorry. All right, then, Mr. Flaxman. Thank you, Your Honor. May it please the court if you hear me? Oh, good. My name is Kenneth Flaxman. I represent the Aptalon. I'm listening to. This is a case about. I'm sorry for that technical glitch. This is a case of five strikes. The question before the court is whether a jury verdict finding that Dr. Shah was deliberately indifferent would be set aside as against the weight of the evidence. The first strike happened when Mr. Murphy went to sick call on May 6th. He said he presented a swelling face. The nurse who examined Mr. Murphy went to Dr. Shah and said this guy is a his left cheek is softball size. And Dr. Shah said, give him penicillin. I don't have to see him. He explained when he was deposed that, well, I have my own line. The nurse didn't say go see him. So I didn't see him. That's strike one. Strike two is the next day when Mr. Murphy presented with more swelling. He couldn't open his mouth. He saw the nurse at 1 a.m. And Mr. Murphy would tell the jury that getting a guard to bring him to see a nurse at 1 a.m. is really exceptional. It's not like he got up out of the cell and walked to the 24-hour instant care. He presented himself to a guard, showed how horrible he looked, and the guard took him to see a nurse. The nurse said, I'm not calling the doctor now and told him to come back in the morning. He came back in the morning. That's strike two. Dr. Shah was called. This was a Saturday. And he said, well, give him antibiotics. Give him, continue with the oral antibiotics and give him steroids. A jury would ask, was it sensible for Dr. Shah to tell this, expect this to take oral antibiotics when he couldn't open his mouth? And there's going to be expert testimony that if you give a steroid without penicillin, without an antibiotic, it's horrible. It makes the infection worse. That's strike two. Strike three was Sunday when Dr. Shah didn't check in to see how his patient was doing, whether the swelling was going down, whether he was reacting to the penicillin or whether he was getting worse. The next day, Monday, May 9th, the strike four, Dr. Shah saw Mr. Murphy in person for the first time. He saw that Mr. Murphy could not close his mouth. He gave him a steroid injection and he put him in the infirmary. The infirmary isn't a hospital. It's just a place where you're kept in a room in a bed. And a jury would wonder, what was Dr. Shah expecting would happen by putting him in the infirmary? We keep a closer look at him, but the experts will say, you know, when somebody has that much swelling after a dental procedure, you got to send it to the hospital for imaging. And Dr. Shah didn't do that on May 9th. He didn't do it on May 10th. Again, Dr. Shah claimed that the infection was getting better, but there was more swelling. So that's a disputed question. Was it getting better? Was there more swelling? And the swelling continued until the next day when finally at 1145, Mr. Murphy was sent out to a hospital. He went to the local hospital, which immediately sent him to a larger hospital, Carl Hospital, where he had surgery and stayed in the hospital for three months, three weeks, excuse me. The district judge said, well, you don't have enough to get to a jury on this because Dr. Shah was doing something, no matter how nonsensical or how ineffective it was. We set out in our opening brief and our reply brief, how that's not the law. There's a jury question here about whether he had the subjective element to deliver indifference. There's no dispute about the objective element, but a trial is required for the subjective element. If there are any questions, I would be pleased to answer them. I don't believe so, Mr. Waxman. Thank you, Your Honor. Mr. Peek? Mr. Peek, we can't hear you. Thank you. Can you hear me now? Yes. Okay. Sorry about that. My name is Kevin Peek. I represent defendants of L.E.'s Dr. Shah and Dr. Wexford. The magistrate judge in this matter and the district judge correctly determined that this was a matter where there were no factual issues of dispute up that the jury needs to make a decision for. As Mr. Flaxman went through the facts earlier, the tooth extraction that started all this occurred on May 4th. Two days later, the plaintiff, Mr. Murphy, saw Nurse Rice, where he did have some swelling. It was communicated to Dr. Shah. Dr. Shah determined that he needed to prescribe him penicillin, which is a broad-spectrum antibiotic, and the use of it was supported not only by his own judgment and experience, but also by two of the experts, Kushner, an oral surgeon, and Dr. Jackson, a dentist. Also, Dr. Bailey, the surgeon who performed the surgery on the plaintiff following all these events, determined that this was also a common use. Penicillin was commonly used as an antibiotic for oral cases. On May 7th, the next day, the plaintiff saw Dr. Rice again. Dr. Shah ordered an injection of a steroid, which in his experience can be used to accelerate the improvement of an infection. This was also supported by expert testimony. That afternoon, the plaintiff returned to the medical unit and determined that he was feeling better. On May 9th, two days later, on a Monday, that is when Dr. Shah did see Mr. Murphy in person. Mr. Murphy's vitals were normal, but given the swelling, he determined that he needed to be put under a 23-hour observation. He was also provided another injection of a steroid in order to help decrease the size of the inflammation. The next day, Dr. Shah saw him again in the infirmary, determined that he needed to take an injection of rocepin, which is another antibiotic that actually treats quicker. So, he used that injection. That evening, the plaintiff did not develop a fever, which went away in a matter of hours under the direction of Dr. Shah and his prescription that he prescribed. The next day, the next morning is when, for the first time, there was whistling whenever Mr. Murphy would breathe. That was a termination, as seen in the testimony, that that was the first time that there was an indication that there was going to be any trouble breathing for Mr. Murphy. At that point in time, as soon as Dr. Shah found that out, he immediately sent him out for assessment at the local hospital. Now, there are several issues. Mr. Peek, this is Judge Brennan. A question for you. Yes, Your Honor. This is obviously a very serious dental infection. This is one of those cases where we're talking both about whether or not it's a constitutional deprivation versus medical malpractice. And Dr. Citrenberg's expert report in his testimony seems to be at the fulcrum of that. Can you explain to us why you believe Dr. Citrenberg's either expert report or testimony should not be relied upon to conclude constitutional deprivation versus medical malpractice? Well, Your Honor, Dr. Citrenberg mentioned that the treatment that Dr. Shah provided was used with his medical judgment. He disagreed with what treatment was provided, but he acknowledged that he did not ignore the patient and he used his medical judgment while giving the treatment. As the case law supports, that is not a sign of deliberate indifference. That is just a difference of opinion between the two physicians. And in fact, looking at Dr. Shah, Dr. Kushner, Dr. Jackson, and Dr. Bailey all had the opposite determination regarding the penicillin. Specifically, the penicillin was inappropriate for this kind of case. And that is why the reason why Dr. Citrenberg's report and testimony does not stop does not stop summary judgment is because it's just a difference of opinion in this matter. There's no clear deliberate indifference by Dr. Citrenberg's testimony. I continue. Thank you. Yes, Your Honor. As for the signs and symptoms, in order to send the plaintiff earlier to the hospital, that is all viewed with the benefit of hindsight. At the time that Dr. Shah saw the information that he was provided at the time, there was no reason using his medical judgment that he needed to send the patient out until there was the issue, the potential issue of difficulty breathing on Wednesday, May 11. All of these events occurred within one week. This is not a long-term issue in which there may have been treatment provided that was known to be effective. Antibiotics take a few days to start to show an effect. And so, when they were starting to be administered, Dr. Shah needed to observe him, which he did, including asking for the medical staff to check his vitals every four hours on that, starting on that Monday. So, not only as the symptoms continued, Dr. Shah's treatment methods escalated, started out with penicillin, added steroids, turned into washing him constantly, additional medication of Tylenol and ibuprofen. And eventually, when it became to the point where Dr. Shah determined that he needed hospital assistance, they sent him out immediately on May 11. As the lower court determined, there is no factual issues left. This really does come down to there may be factual issues, but they are immaterial to the case. And in order to be granted summary judgment, they must be material to the case and genuine issues of fact, which there are not in this matter. I'm available to answer any questions. If there are. I don't think there are any further questions. Thank you. Mr. Flaxman. Thank you, Your Honor. It's correct that there was differing opinions about whether penicillin is a good medicine for an infection. There was some opinions about giving steroids with penicillins outside of the hospital, which there was a dispute between the experts. There was no dispute about Dr. Citrenberg's opinion that somebody presenting with these signs and symptoms after a dental extraction should have been sent to a hospital, should have been sent on May 7th, should have been sent on May 8th, should have been sent on May 9th, should have been sent on May 10th. The only anything in objection, in opposition to that was Dr. Shaw's claim. Well, I didn't think I should send him. That was such a vast departure from the ordinary standard of care that a jury could conclude it was deliberate indifference to satisfy the constitutional standard. Thank you. Thank you, Mr. Flaxman. Thanks to both counsel and the case will be taken under advisement.